LÓPEZ ET AL., PLAINTIFFS AND APPELLEES, *v.* QUIÑONES ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Mayagüez in an Action for the Annulment of a Deed, Etc.

No. 2126.—Decided April 10, 1922.

SUMMONS—SERVICE—RETURN.—When a summons is not served by the marshal because the deputy marshal who serves it does not sign the return in the name of the marshal, and it is not stated in a sworn return that the server is not a party to the action and is more than eighteen years of age, the service is void.

ID.—ID.—ID.—In this case, following the signature of the server to the return are the words: "Over eighteen years." *Held:* That as that statement was not made in the body of the return it can not be considered a part of it.

ID.—ID.—ID.—EVIDENCE.—When the return does not show that the person who served the summons was not a party to the action and was over eighteen years of age, the burden of proving these facts is on the defendants in the action for annulment.

ID.—ID.—JURISDICTION—PRESCRIPTION—GOOD FAITH.—The good faith necessary to acquire ownership by ordinary prescription can not be pleaded by one to whom the property was sold in execution of a judgment in an action in which the court did not acquire jurisdiction of the defendants because the service of the summons was void.

MORTGAGE—COUNTER-CLAIM.—In an action to annul the judgment entered in another previous action in which these defendants were plaintiffs and these plaintiffs were defendants, to recover the deferred part of the purchase price of a property secured by a mortgage on the same property, a counter-claim by these defendants for various instalments of the mortgage can be maintained.

COSTS — TEMERITY. — When the facts do not show temerity on the part of the defendants the costs should not be imposed upon them.

The facts are stated in the opinion.

*Mr. J. Texidor* for the appellants.

*Messrs. J. R. F. Savage* and *José G. Torres* for the appellees.

MR. JUSTICE ALDREY delivered the opinion of the court.

In the year 1894 Eugenio Arturo López purchased a coffee plantation, formerly called Adjuntas and now called Paquita, situated in Maricao and composed of 327 acres of land, for the sum of 55,000 *pesos* of the currency of that time, paying 15,000 *pesos* in cash and agreeing to pay the remaining 40,000 in different instalments of which the last was to become due in January of 1906, and securing the payment of the instalments by a mortgage created on the same property.

After the death of the debtor, Tomás Quiñones brought an ordinary action in the District Court of Mayagüez in 1905 against his adult children Antonio and Carmen Agustina and against his widow, Francisca Comas, personally and as the representative of two other minor children named Eugenio and Arturo Martín, as composing the debtor's succession. He set up these facts and alleged that he had purchased some of the mortgage instalments, of which he sought to recover $9,600, the equivalent of 16,000 *pesos*, representing the in-

stalments due and unpaid. In that action a default judgment was entered against the defendants and was executed by the sale of the mortgaged property at public auction to Tomás Quiñones as the highest bidder at the forced sale. On August 25, 1905, the marshal executed a deed of sale in his favor and it was recorded in the registry of property, Quiñones taking possession of the property on the said date.

Eleven years later and after Francisca Comas had died, the four children of that marriage named Eugenio, Carmen Agustina, Antonio and Arturo López Comas brought an action in the District Court of Mayagüez against Tomás Quiñones and his wife, Antonia Quiñones, praying the court to declare null and void the action brought in 1905 by Tomás Quiñones against the succession of Eugenio Arturo López. When the action against Quiñones and his wife was brought, Arturo López Comas was a minor and was represented by his brother Antonio, but while the action was pending he became of age and entered personal appearance. The grounds of. that action were as follows: First. That the summons issued against the defendants did not contain the admonition that if they failed to appear and answer the plaintiff would take judgment for the amount specified in his complaint. Second. That the return of service of the said summons separately on the·two adult children and on the widow personally and as the representative of her minor children was not made by the marshal, but by one Pedro M. Pabón, who did not state under oath that he was not a party to the action and that he was over eighteen years of age. Third. That the minor defendants Eugenio and Arturo, who were 18 and 9 years old, respectively, were not summoned personally. Fourth. That when the judgment was rendered against the defendants the clerk had not entered their default. Fifth. That the property was sold without a levy of the execution.

Tomás Quiñones and his wife denied the allegations of

the plaintiffs and set up various defenses and a counter-claim. After a trial judgment was rendered to the effect that the summons, the judgment and the sale were null and void, ordering that the record of the sale in the registry of property be canceled; that the defendants restore the property to the plaintiffs with its mesne profits, the amount of which, by stipulation of the parties, should be determined later, and that the defendants pay the costs.

Defendant Tomás Quiñones. died and was substituted by his heirs, who, together with the widow, Antonia Quiñones, took the present appeal from that judgment, assigning four-teen errors of which the first five are as follows:

"First: The court erred in adjudging null and void the summons served in the civil action brought by Tomás Quiñones against the succession of Eugenio Arturo López y Quiñones, composed of Francisca Comas y Atresino personally and as the representative of her minor children Eugenio and Arturo Martín, and of her other adult children named Antonio and Carmen Agustina López y Comas.

"Second: The court erred in declaring null and void the judgment rendered on May 31, 1905, in the said suit, as well as the sales made by the marshal of the said court on August 15 and September 9, 1905, respectively, to Tomás Quiñones of the land, houses and appurtenances involved in this suit.

"Third: The court erred in adjudging null and void the deed of forced sale of the said land, houses and appurtenances executed by the marshal of the said court in the names of the heirs of Eugenio Arturo López y Quiñones in favor of Tomás Quiñones on August 21, 1905, before notary José de Diego.

"Fourth: The court likewise erred in ordering the cancelation in the Registry of Property of San Germán of the record of the property in litigation made in favor of Tomás Quiñones.

"Fifth: The court likewise erred in adjudging and ordering the defendants to restore to the plaintiffs the land, houses and appurtenances in litigation."

The defendants grouped together the above five assignments of error and argued only the first, being of the opinion that the other four are a legal consequence of the pro-

nouncement of the court below adjudging null and void the summons served in the action brought by Tomás Quiñones, which pronouncement they attack in the first assignment.

The original record of the action sought to be annulled was admitted in evidence in this case and it contains three copies of the summons issued by the clerk for the purpose of summoning the defendants, one to be served on the widow, Francisca Comas, personally and as the representative of her minor children Eugenio and Arturo, and two to be served on the two adult children. The returns on all are substantially the same and it will be sufficient to transcribe one of them as it appears in the transcript of the record brought up to this court. It reads as follows:

"RETURN OF SERVICE BY THE MARSHAL.

"I hereby certify that I received the within summons at 11 a. m. of the 28th of April, 1905, and that I served the same at 5 p. m. on the 28th of April, 1905, personally on Francisca Comas, widow of López, individually and as the representative of her minor children Eugenio and Arturo Martín, defendants named in the said summon, by delivering to the said defendant and leaving with her personally at San Germán, her present residence, a copy of the said summons, together with a true and exact copy of the complaint in the action referred to in the said summons.

"Dated this 29th day of April, 1905.

"Signed by Pedro M. Pabón, Deputy Marshal.

"Over eighteen years of age.

"Sworn and subscribed to before me this twenty-ninth day of April, nineteen hundred and five. San Germán.

"Signed: Joaquín Nazario de Figueroa, Notary Public.

"(Notary's Seal.)"

The three returns are signed by Pedro M. Pabón, deputy marshal, and although they are made as certificates, he signed and swore to them before a notary, which must be done when the summons is served by a person who is not the marshal, perhaps having in mind that although the decisions of the courts are not in accord as to whether a deputy marshal may

certify to a return in his own name, yet the rule established by the decisions of California, the source of our Code of Civil Procedure, is that he can not certify to it in his own name, but may do so in the name of the marshal. In the case of *Orcasitas* v. *Márquez et al.,* 19 P. R. R. 454, this court said:

"If the service of the summons is made by the marshal, his certified return, made under the solemnity of his oath of office, is sufficient; if made by a deputy marshal who has been properly sworn in and who is acting under the authority of the marshal, his certified return, duly made and signed in the name of the marshal under whose authority he acts, is likewise sufficient; * * * "

This summons having been served by a person other than the marshal, inasmuch as the deputy marshal who acted did not sign the returns in the marshal's name, in order that the court could acquire jurisdiction of the persons of the defendants and dispose of the action on their default it was necessary, in accordance with section 92 of the Code of Civil Procedure, that the returns should show that the process server was not a party to the action and was more than eighteen years of age. *Andino* v. *Knight,* 20 P. R. R. 185; *Serrano* v. *Berdiel et al.,* 22 P. R. R. 416; *Torres & Eseñat* v. *Alfaro,* 24 P. R. R. 683; *Delgado* v. *Registrar of Humacao,* 25 P. R. R. 450; *Quintana et al.* v. *Aponte,* 26 P. R. R. 169; *Buonomo* v. *Succession of Juncos,* 28 P. R. R. 380. These requirements were not complied with in the returns, for although in the second one the words "over eighteen years of age" were written outside of the body of the affidavit and following the signature of Pedro M. Pabón, after which a notary certified that the return was subscribed and sworn to before him, the statement with regard to age can not be considered as having been sworn to, for only what is stated in the body of the affidavit and above the signature is what can be considered as the process server's affidavit. What is written below the signature in a signed document can not be

considered as a part of it, unless it is so shown in some manner. Moreover, in this case no evidence was produced to show that the process server was more than eighteen years of age when he served the summons; therefore, we must conclude, as did the court below, that the services of the summons on the defendants in the first action were null and void; that the court did not acquire jurisdiction of them, and that, as a consequence, all of the subsequent proceedings are also null and void, including the sale made by the marshal. On that point in the case of *Oliver et al.* v. *Oliver,* 23 P. R. R. 168, we said: "Treating the judicial sale as a contract in which the court or its duly authorized official representative is substituted for the real vendor whose 'consent' is by a paradoxical legal fiction given by the court, yet the court must have jurisdiction at least over the subject-matter and usually over the person of the defendant." By reason of the foregoing we need not consider whether the returns are void for any of the other reasons alleged in the complaint.

But in arguing the first assignment of error alleged to be the basis of the next four, the appellants maintain that after the years that have elapsed between the two actions, any absence of proof of a particular fact sufficient to give validity to a judicial proceeding should be presumed, and that the burden was on the plaintiffs to prove that there was no service of the summons, but they have produced no evidence to that effect.

We do not agree to the first proposition of the appellants, for the mere effluxion of time does not create any presumption in favor of services of a summons which do not appear to have been made according to law. As regards the second, although it is true that the burden was on the plaintiffs to prove that there was no service of the summons, they performed that duty by producing before the court the summons issued for service on the defendants and the returns

thereon, from which it appears that the services were made by a person who was not shown to possess the qualifications required by law; and if notwithstanding these defects in the returns it was true that Pedro M. Pabón possessed the lawful qualifications necessary to make his services of the summons valid, the burden was on the defendants to prove that fact, and they did not. In the case of *Buonomo* v. *Succession of Juncos, supra,* this court said:

"In the case now before us the process server did not swear or show in any other lawful manner that he was of the age required by law for making the service and that he was not a party to the action. Furthermore, this question having been raised and the defendants having had an opportunity to prove that the process server was of the age required by law, they did not do so; therefore the jurisprudence established in the case of *Quintana et al.* v. *Aponte,* 26 P. R. R. 169, is applicable. * * * "

The sixth assignment of error is based on the fact that the defendant was adjudged to pay for the mesne profits of the property in suit up to the time of its final restitution, but the appellants postpone its discussion until they attempt to show that Tomás Quiñones was not a possessor in bad faith.

The appellants also grouped the errors assigned under numbers 7 to 11, the basis of which is the failure to sustain the defenses set up in their answer. These assignments read as follows:

"7. The court erred in not sustaining the first defense set up by the defendants that the supposed defects alleged in the complaint, if such, can not be invoked now to annul and set aside all of the proceedings, because the plaintiffs have been guilty of abandonment or laches for a period of more than six years.

"8. The court erred in not sustaining the second defense that there is no cause of action; first, because the adult heirs can not repudiate their own acts or destroy the legal status already created; second, because a moiety of the estate is community property belonging to the mother, and as she was lawfully summoned, the plaintiffs have no cause of action as regards the said moiety; third, be-

cause, this being so, the plaintiffs can not sue for the whole property until after a partition is made of the estate.

"9. The court erred in not sustaining the fourth defense of the defendants that the estate of Eugenio Comas was accepted by the plaintiffs with benefit of inventory and that the mother of the plaintiffs was the administratrix of the estate and was acting as such when the foreclosure proceeding was brought by Tomás Quiñones.

"10. The court erred in not sustaining the sixth defense to the effect that if a liquidation were made of the conjugal partnership the separate property contributed thereto by the mother of the plaintiffs would not be covered by the community property and therefore she alone would be the owner of the mortgaged property, and the plaintiffs being her heirs, they are estopped from attacking the acts acquiesced in by their ancestor. .

"11. The court erred in not sustaining the seventh defense to the effect that the defendants acquired the ownership of the property by possession for ten years as against persons present, in good faith and with color of title."

With regard to the seventh assignment, the appellants say that their defense is not prescription. Inasmuch as prescription is not alleged as a defense by the defendants, but only the abandonment of their rights by the plaintiffs for the time elapsed, the trial court did not commit the error assigned.

We need not consider the assignments numbered 8, 9 and 10, because they are based on the assumption that the court before which the action was prosecuted in 1905 acquired jurisdiction of the widow, Francisca Comas, and of the two children who were then of age, when the fact is that it did not, as we have seen in passing upon the first assignment.

Let us consider the eleventh assignment based on the acquisition by the defendants of the ownership of the property by the lapse of ten years as against persons present, in good faith and with color of title.

Inasmuch as the complaint in this case was filed after ten years had elapsed from the time the property was con-

veyed to the defendants, and as the successors of Arturo López have always resided in this Island, the only question to be considered is whether Tomás Quiñones acquired the property in good faith and with color of title.

Section 1858 of the Civil Code provides that ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, in good faith and with proper title. Section 1841 provides that for ordinary prescription of ownership and other property rights, it is necessary to possess things in good faith and under a proper title, during the time specified by law. Section 1852 provides that the conditions of good faith required for possession in sections 436, 437 and 544 of that code are equally necessary for the determination of said requisite in the prescription of ownership and of other property rights. Section 436 says that a *bona fide* possessor is deemed to be the person who is not aware that there exists in his title or in the manner of acquiring it, any flaw invalidating the same. Section 437 prescribes that good faith is always presumed, and any person averring bad faith on the part of a possessor is bound to prove the same. Section 554 has no application to the present case.

Taking these statutes into account, the appellants contend that the only manner in which it can be maintained that there was bad faith on their part is by advancing the argument that they knew the law, but that good faith depends upon personal and direct knowledge of the defect in the acquisition and not upon the supposed fiction that because the law is known the defect which in a particular case arises from non-compliance therewith must also be known and necessarily carries with it bad faith.

Inasmuch as section 2 of the Civil Code declares that ignorance of the law does not excuse non-complaince there-

with, it is a logical legal consequence that one who does not comply with the laws wilfully violates them and, therefore, does not act in good faith. And this is what occurred in this case, for as Tomás Quiñones knew from the law that in order to give the court jurisdiction of the persons sued by him in the action of 1905 it should appear that the summons had been served by the marshal, or by another person who had no interest in the suit and was more than eighteen years of age, in failing to comply with these requisites he did not act in good faith, in the legal meaning of these words, and although he was protected by the presumption of good faith, the presumption was destroyed by the plaintiffs in introducing evidence that he had not complied with the law, for which reason the defendants can not maintain that they did not know that there was an invalidating defect in their title, or in the manner of acquisition. As a consequence of the bad faith in the acquisition, the defendants are bound not only to restore the property, but also to pay the mesne profits, in accordance with section 457 of the Civil Code.

In the absence of the requisite of good faith in the acquisition, which is one of the elements required by law for acquiring the ownership of real property or other property rights by ordinary prescription, it is unnecessary to determine whether the other requisite, a colorable title, was present.

The appellants also alleged the following in support of their appeal:

"12. The court erred in not giving judgment on the counterclaim made by the defendants.

"13. The court erred in not adjudging that for all lawful purposes the mortgage created in favor of defendant Quiñones was in full effect and in not adjudging that the plaintiffs should pay the amount due on that mortgage."

In answering the complaint these appellants set up a

counter-claim, alleging that there was a first mortgage on the property sued for by the plaintiffs amounting to $18,600 in favor of the counter-plaintiffs, created in a public deed, and that of this sum the plaintiffs still owed $12,600, with interest at the legal rate, which they had not paid in whole or in part. This pleading of the defendants concluded with a prayer for judgment dismissing the complaint in all of its parts and sustaining the counter-claim for $12,600, with interest at the legal rate from the 31st of May, 1905, until paid, and the costs.

The plaintiffs opposed the counter-claim, denying its allegations, and in rendering its judgment the court said nothing about it.

As appears from the documentary evidence in this case, Tomás Quiñones acquired several of the instalments of the debt contracted by the father of the plaintiffs upon purchasing the property and secured by a mortgage thereon, to the amount of 31,000 *pesos* of the currency of that time, equivalent to $18,600, of which he was paid $6,000 by the awards made to him in the suit now sought to be annulled, there remaining in his favor a balance of $12,600 which the debtors, the plaintiffs in this case, have not paid, as testified by Tomás Quiñones and not contradicted. It does not appear that payment of this sum had been demanded in or out of court prior to the counter-claim made on February 17, 1917.

Although the appellees say in their brief that they demurred to that counter-claim on the ground of lack of facts sufficient to constitute a cause of action, because of failure to allege therein the date on which the mortgage was created and its conditions, the date on which it became due, the part of the mortgage that had been paid, the manner in which such payment was made and the balance due, we have not found that demurrer in the transcript brought up on ap-

peal. Besides, the complaint itself shows the date on which Arturo López, the father of the plaintiffs, became indebted for 40,000 *pesos* of the 55,000 *pesos* which was the purchase price of the property, payable in different instalments, and the evidence examined at the trial established the facts which the plaintiffs do not recognize in the counter-claim.

The appellees also allege that the counter-claim does not 'lie because it does not come within any of the cases specified in section 111 of the Code of Civil Procedure. According to that statute, a counter-claim must be in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action on the said counter-claim, provided that it arises out of one of the following causes of action: "A cause of action arising out of the transaction set forth in the complaint, as the foundation of the plaintiff's claim, or connected with the subject of the action. 2. In an action arising upon contract, any other cause of action arising also upon contract and existing at the commencement of the action."

Of course, in this case a separate judgment could be rendered on the counter-claim and the counter-claim is connected with the subject-matter of the action, inasmuch as the object of this suit is to annul the action brought by Tomás Quiñones in 1905 against these plaintiffs to recover a part of the deferred payments owed by them and secured by a mortgage on the same property sought to be recovered in this action, and the counter-claim is to recover $12,600 of the instalments of the same debt so secured. In the case of *Arvelo* v. *Banco Territorial y Agrícola*, 29 P. R. R. 996, which was similar to the present case, the plaintiffs were adjudged, by virtue of the defendant's counter-claim, to pay to him the sum due and secured by the mortgage whose foreclosure was annulled.

Considering the foregoing, the lower court should have sustained the counter-claim and adjudged the plaintiffs to

pay to the defendants the sum of $12,600, with interest at the legal rate of 6 per cent per annum, there being no agreement as to the rate, from the 17th of February, 1917, when payment was first demanded.

The error assigned under number 13 is not supported by the record, for the defendants did not pray for what they now allege the court should have declared regarding the reality of the mortgage credit of the defendants. On the other hand, this seems to be a consequence of the declaration of nullity of the action of 1905 because of defects in the foreclosure proceedings to recover some of the instalments and of the cancelation of the records in the registry of property of the conveyances made to Tomás Quiñones.

The last assignment under number 14 is based on the fact that the defendant-appellants were adjudged to pay the costs, expenses, disbursements and attorney fees incurred by the plaintiffs.

If we take into account that the defect that the returns did not show that the person who served the summons was not a party to the suit was not very important, for this fact perhaps appears from the record itself (*Serrano* v. *Berdiel et al.*, 22 P. R. R. 416), and that the defendants may have believed that there was no defect as to the said person's age because it appeared above the jurat, although below his signature, that he was over eighteen years of age, and also because, being a deputy marshal, he must have been more than eighteen years old, and considering also that the jurisprudence is conflicting as to whether he could certify to the returns in his own name, we must conclude that there was no temerity in defending this suit and that the defendants should not have been adjudged to pay the costs, particularly as their counter-claim against the plaintiffs was just.

For all of the foregoing reasons the judgment appealed from must be modified so as to sustain the counter-claim, to adjudge the plaintiffs to pay to the defendants the amount

claimed, with interest at the legal rate, and to make no special imposition of costs, and, as so modified, affirmed.

*Modified and affirmed.*

Chief Justice Del Toro and Justices Wolf and Hutchison concurred.

### ON RECONSIDERATION.

On motion for reconsideration MR. JUSTICE ALDREY, on June 9, 1922, delivered the following opinion of the court:

The plaintiffs in this case prayed for the annulment of the judgment rendered in another suit brought by the ancestor of the present defendants against the predecessor of the present plaintiffs wherein the latter was adjudged to pay $9,600 for instalments due on a mortgage for a greater sum, and also for the annulment of the sale made in satisfaction of the judgment of certain properties which were sold for the sum of $6,000 to the judgment creditor. The present defendants opposed these declarations of nullity and in a counter-claim prayed that the plaintiffs be adjudged to pay them the $3,600 which was not covered by the execution of the judgment and also other matured instalments of the mortgage, making a total of $12,600. The judgment of this court declared the existence of the alleged nullities and adjudged that the plaintiffs pay to the defendants and counter-plaintiffs the said $12,600, but now the defendants and counter-plaintiffs move for a reconsideration and pray that we adjudge the plaintiffs to pay the $6,000, the purchase price at the sale that has been adjudged null and void, relying upon section 1270 of the Civil Code according to which when the nullity of an obligation has been declared, the contracting parties shall restore to each other the things which have been the object of the contract with their fruits, and the value with its interest.

We need not reconsider our judgment in order to make

that pronouncement, because the forced sale, wherein no money was paid and only an award was made in part payment of the debt, being adjudged null and void, and also the proceedings from and after the summoning of the defendants in that action and the said judgment and award being nonexistent under the law, the status must necessarily be, without a special declaration by this court, the same as it was before the commission of the acts adjudged null and void.

The motion for reconsideration must be denied.

*Reconsideration denied.*

Chief Justice Del Toro and Justices Wolf and Hutchison concurred.